# VIRGINIA-CAROLINA LUMBER COMPANY *v.* EISINGER.

CONTRACTS; SALES; DIRECTION OF VERDICT.

Where a carload of lumber sold on condition it proves satisfactory to the purchaser, freight to be paid by the seller, is shipped to the purchaser, and is immediately rejected by him as unsatisfactory, which rejection is accepted by the seller, the lumber remains the property of the seller, subject to the obligation of the seller to pay the purchaser the freight paid by him at the seller's request and for his benefit; and in an action by the seller for the purchase price the court properly directs a verdict for the defendant for the amount of freight paid by him.

No. 1750.   Submitted April 4, 1907.   Decided May 7, 1907.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the Court in an action of assumpsit.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action of assumpsit brought by the appellant, the Virginia-Carolina Lumber Company, against the appellees, Frank J. Eisinger and Walter G. Eisinger, trading as Eisinger Brothers, to recover the sum of $230.12, the price of a carload of lumber sold and delivered to them April 20, 1905. Defendants pleaded *non assumpsit* and a set-off in the sum of $157.85, of which $67.47 were for freight paid on said lumber at request of plaintiff. There is no conflict in the evidence, which consists, on all material points, of correspondence between the parties. The proof shows that plaintiff's agent offered to sell the defendants certain lumber, described as sheathing, at the rate of $14

per thousand feet, delivered in the city of Washington; freight payable by plaintiff. Defendants' letter in reply dated April 6, 1905, acknowledged the offer of two or three cars of the designated lumber at said price, and after saying that this was the price they were paying "for good sound edge box D 1. S.," and that they could get "the red heart and mill cull sheathing for $12.50," added: "If what you have to offer is good sound regular edge box, we will try a car or two of it, but if it is the red heart and mill cull kind, we don't want it. If this is all right and you conclude to ship us a car we would like it to come *via* B. & O. to N. Y. Ave. Yard." Plaintiff replied to this on April 8, and, among other things of no importance, said: "In order to make a beginning with you, you might take a small carload as a trial, and if not satisfactory we could not expect to sell you more of the stock." Plaintiff wrote again on the 14th saying that it had not heard from defendants, and that it has a carload of sheathing on hand that it "would be glad to ship as a trial." Defendants replied to this: "We understood that you would send us this one car as a trial. Let it come." The car was shipped, and, when received, defendants wrote immediately saying that the lumber would not do at all; that they had better lumber bought for red heart for $11.50; that the carload sent is by far the worst they have had for a long time; that they would, therefore, have to cancel the order for the other cars given upon condition that the first would prove satisfactory; and that if good sound edge box could be sent "all right, but we cannot use any more like sample unless you can make price $11.50." Later on the same day they wrote: "We find on further inspection that it is far worse than what we first thought, and will have to decline it altogether. We cannot use this kind of lumber at any price. We have hauled the car and have it piled in our yard subject to your order upon the payment of charges." Plaintiff replied to these communications, regretting that the stock was not satisfactory. After stating that like lumber had been sent to other parties who regarded it as worth the money, it stated that shipment of the other cars had been stopped by telegraph to the mill. On the next day plaintiff

wrote again, saying that the matter would be taken up again in about a week on the return of the writer, and adding: "In the meantime we trust that you will look around and see if you can find a customer for the stock that will let us out of the same." No further correspondence was had until August 4, 1905, when plaintiff wrote to defendants, referring to the complaint, and saying: "No doubt in view of the unusual demand for lumber since this car was shipped you, you have been able to dispose of this stock. We would thank you to let us have check and freight bill in settlement." August 26 defendants replied, referring to the former letter saying they would not take the lumber at any price, describing it as almost worthless, and proposing that they would accept it in discharge of the freight bill that had been paid, otherwise the plaintiff could pay charges and take it away. Plaintiff replied on August 30, stating that an agent would come in a few days to "arrange disposition for this stock," and declining the offer to give the lumber in discharge of the freight bill. On September 16 plaintiff wrote again, saying that, as the stock was in defendants' yard, plaintiff would have difficulty in interesting other parties. The letter contained the following: "We therefore write to ask you if you are in a position to make us a reasonable offer for this stock; if not, please advise what will be the cost of reloading same and we will reship it to another point, of course refunding you the amount of freight which you have paid. We will, of course, very much prefer to dispose of the stock to you if we can do so on a reasonable basis." Defendants replied on the 22d, saying that the lumber was practically worthless, but they would pay $5 per thousand for it, which would amount to $16.43 after deducting the freight bill. Plaintiff replied on the 23d, expressing surprise at the tone of defendants' letter, complaining of the unloading of the car, and saying it would refund freight provided defendants would load the lumber in a car; otherwise would insist upon settlement. Plaintiff wrote again on September 28, October 3, and October 13, 1905. These letters were not replied to, and add nothing that is of importance.

Upon the conclusion of the evidence the court directed the jury to find a verdict for the defendants for the amount of the freight advanced by them, namely $67.47.

*Mr. H. Winship Wheatley* for the appellant.

*Mr. Hayden Johnson* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

There was no error in the action of the court. The order for the lumber was not an absolute one. The consignment of the first carload was experimental. If not satisfactory to the defendants it was no sale. Defendants were not satisfied with the lumber, and immediately notified the plaintiff of their reasons for rejection. There was testimony tending to show that the lumber was of an inferior classification, and not what it had been represented to be. This testimony was immaterial, however, because the plaintiff did not contest the fact at the time. It accepted the rejection of the lumber, and the repudiation of the order therefor. The contract of sale was at an end, and nothing in the actions or letters of the defendants indicated the slightest intention to renew it. Being at an end, the lumber remained the property of the plaintiff, subject to the obligation to pay defendants the freight charged thereon, which they had paid at its request and for its benefit.

The judgment will be affirmed, with costs; and it is so ordered.                                    *Affirmed.*